IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
FEB 28 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED

| | |
|---|---|
| BILLY RANDOLPH, JOHN IVAN POE, ANITA LOUISE HENDERSON, individually; STEVENSON L. DUNCAN, individually and on behalf of all employees similarly situated ) ) ) ) ) ) Plaintiffs, ) ) vs. ) ) DRUMMOND COMPANY, INC., and UNITED ) MINE WORKERS OF AMERICA, ) ) Defendants ) | Civil Action Number MAR 2001<br><br>99-C-0404-S |

**MEMORANDUM OPINION**
**GRANTING SUMMARY JUDGMENT**

Plaintiffs Billy Randolph, John Ivan Poe, Anita Louise Henderson, and Stevenson L. Duncan bring this action against Defendants Drummond Company, Inc. ("Drummond") and United Mine Workers of America ("the Union") claiming that the Union violated its duty of fair representation by entering into a collective bargaining agreement with Drummond which changed the seniority system at Drummond's Shoal Creek Mine. The Defendants have moved for summary judgment. Based on the undisputed facts, the Court concludes that the Defendants are entitled to judgment as a matter of law. The Defendants' motions are due to be granted.

I. The Undisputed Facts

Generally, in unionized coal mines, mine seniority prevails. Mine seniority is based on the date on which an employee was hired at a specific mine. Prior to the opening of the Shoal

Creek Mine, mine seniority was utilized at all Drummond mines whose employees were represented by the union. The July 3, 1993 Interim Agreement ("Interim Agreement") between the Independent Bituminous Coal Bargaining Alliance ("IBCBA"), of which Drummond is a member, and the Union, provides for the use of mine seniority. The Interim Agreement also contained a Special Local Circumstances" provision, which gave the Union and the mine operator the right to negotiate modifications to that Agreement for a specific mine, e.g. a new mine.

Drummond opened the Shoal Creek Mine in 1994. Its workforce is substantially larger than that of all other new coal mines. In a Memorandum of Understanding dated November 5, 1993, Drummond and the Union agreed that company, rather than mine, seniority would be used at the Shoal Creek Mine.

Drummond closed its Kellerman Mine in 1995. In November 1996, Drummond closed its Chetopa Mine and announced that it would close its Mary Lee #1 Mine sixty days from November 22, 1996.

In light of these mine closings, bargaining unit employees of the Shoal Creek Mine became concerned that their job rights would be jeopardized if the displaced miners were hired at Shoal Creek Mine. After receiving approval from the International Union, Local Union 1948 conducted a referendum of its members. Membership in Local 1948 is limited to the bargaining unit employees of the Shoal Creek Mine. A large majority of the Local 1948 members voted to change the system from company seniority to mine seniority. Thereafter, on May 29, 1998, Drummond and the Union executed a local agreement which embodied the result of the referendum.

All of the plaintiffs have applied and are eligible for jobs at the Shoal Creek Mine.

2

Plaintiff Billy Randolph worked at Drummond's Mary Lee #1 Mine until he was laid off on May 15, 1997. He was hired at the Shoal Creek Mine on August 14, 1998. Plaintiff John Poe had worked at Mary Lee #1 Mine for 26 years before he was laid off in July 1997. He was hired at the Shoal Creek Mine on August 14, 1998. Plaintiff Louise Henderson, who has a 1975 company seniority date, was laid off from Mary Lee #1 Mine on January 7, 1997. She was called to work at Shoal Creek Mine on April 5, 1999. Plaintiff Stephenson Duncan has a company seniority date of January 20, 1975. He was laid off from Mary Lee #1 Mine on July 3, 1997.

Local Union 1881 represents the bargaining unit employees of Mary Lee #1 Mine. After learning of the results of the Local 1948 referendum, it requested that the vote be rescinded, and that a new referendum be held in which both Local 1948 and Local 1881 members would be allowed to vote. This request was made before the May 29 local agreement was executed between Drummond and Local 1948. The Union's president informed Local 1881 that under the Union's constitution, the bargaining unit employees of Mary Lee #1 Mine did not have the right to participate in the referendum of bargaining unit employees of Shoal Creek Mine.

For purposes of the motion for summary judgment, the Plaintiff's claims were timely filed in this court.

## II. The Governing Law

A union breaches its duty of fair representation when its actions are "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Airline Pilots Assn. V. O'Neill,* 499 U.S. 65, 67 (1991), citing *Ford Motor Co. v. Huffman,* 345 U.S. 330,

338 (1953). "[N]othing less than a determination that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice to establish [a claim for breach of the duty of fair representation]." *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206-07 (11th Cir.1982), citing *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir.1980); *Robesky v. Qantas Empire Airways Ltd.*, 573 Fd. 1082, 1090 (9th Cir.1978).

A labor union is liable to its members, under § 301 of the National Labor Relations Act, for breach of its Constitution. *Wooddell v. Int'l Bro. of Elec. Workers*, 502 U.S. 93 (1991); *Pruitt v. Carpenters' Local Union No. 225*, 893 F.2d 1216 (11th Cir.1990). But a union's fair and reasonable interpretation of its own Constitution is binding on the court. *Local 317, Nat'l Post Office Mail Handlers etc. v. Nat'l Post Office Mail Handlers, etc.*, 696 F.2d 1300, 1302 (11th Cir.1983).

### III. Analysis

Much analysis is not required here.

The International Union allowed Local 1948 to conduct a referendum on the measure of seniority to be utilized at the Shoal Creek Mine. None of the Plaintiffs were then employed at Shoal Creek Mine. Thus, they had no right to vote in the referendum, since they were not members of the appropriate bargaining unit. To be sure, the results of that referendum impacted the Plaintiffs - but only <u>after</u> they were hired at the Shoal Creek Mine. As a result of the referendum and subsequent agreement, the Plaintiffs could not use their company seniority to displace incumbent Shoal Creek miners and members of Local 1948.

There is nothing unfair, unreasonable, or arbitrary in the Defendants' agreement to use mine seniority at the Shoal Creek Mine - quite to the contrary, it is totally consistent with industry practice.

The UMW has simply not acted outside the wide range of reasonableness to which it is entitled in the representation of its members whose interests often conflict and collide. It has not transgressed its reasonable interpretation of its constitutional duty to permit all members of a local union to participate in ratification votes. See Article 19 § 6 of the UMW Constitution.

End of analysis.

By separate order, summary judgment will granted to the Defendants

Done this 28th day of February, 2001.

_____
Chief United States District Judge
U.W. Clemon